IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BEVERLY HENDERSON,       : | |
|     Plaintiff,             : | |
| : | CIVIL ACTION |
|        v.                      : | |
| : | NO. 10-7018 |
| CITY OF PHILADELPHIA, et al.,  : | |
|     Defendants.          : | |

**March _29, 2012**                                                                                  **Anita B. Brody, J.**

## MEMORANDUM

Plaintiff Beverly Henderson brings suit against Defendant Police Officer William J. Gress, Jr. under 42 U.S.C. § 1983 for alleged constitutional violations.  Additionally, Henderson brings claims against Gress for alleged violations of state law.  I exercise federal question jurisdiction over Henderson's § 1983 claims pursuant to 28 U.S.C. §§ 1331, 1343(a), and supplemental jurisdiction over her state law claims pursuant to 28 U.S.C. § 1367.  Gress moves for summary judgment on Henderson's federal malicious prosecution claim, and on her state law claims of malicious prosecution and intentional infliction of emotional distress.[1]  For the reasons set forth below, I will grant Gress's motion in part and deny it in part.

---

[1] Initially, Henderson's suit included claims against Defendants City of Philadelphia, Charles H. Ramsey, and Shelley R. Smith.  Defendants moved for summary judgment on all claims against the City, Ramsey, and Smith, as well as on all claims against Gress.  In December 2011, I granted summary judgment as to all claims against Defendants City of Philadelphia, Charles H. Ramsey, and Shelley R. Smith, and reserved judgment on the claims against Defendant Gress.  *See* ECF No. 48.  On January 31, 2012, Gress withdrew his motion for summary judgment as to several of Henderson's claims against him.  *See* ECF No. 50.  Thus, only those claims discussed in the body of this opinion require adjudication.

## I. BACKGROUND[2]

Shortly after midnight on May 9, 2009, Plaintiff Beverly Henderson was walking with several friends on South Street in Philadelphia. Pl.'s Ex. 1 ¶ 4. Henderson and her friends were near the intersection of 3rd Street and South Street when they witnessed police officers from the Philadelphia Police Department making arrests at the intersection. Pl.'s Ex. 1 ¶ 5. There was a large gathering of people observing the arrests. Pl.'s Ex. ¶ 5. Officer Gress was there dispersing the crowd at the intersection. Gress Decl. ¶ 32.

As Henderson was crossing the intersection, she pulled out her cell phone to take a picture of the crowd. Pl.'s Ex. 4 at 56:10-17. As she was about to take the picture, Officer Gress came charging toward Henderson with his baton. Pl's Ex. 4 at 57:24-58:8. Officer Gress grabbed Henderson with his baton and pulled her shirt. Pl.'s Ex. 3 at 65:8-12; Pl.'s Ex. 3 at 109:4-8. Henderson's shirt was ripped open, exposing her bra. Pl.'s Ex. 1 ¶ 9. Officer Gress repeatedly hit Henderson with his baton. Pl.'s Ex. 1 ¶ 11; Pl.'s Ex. 3 at 65:8-14. Officer Gress and other police officers then pushed Henderson into the metal gate of a closed store. Pl.'s Ex. 1 ¶ 13; Pl.'s Ex. 3 at 66:19-67:2, 109:4-11. Despite her requests, the police officers never allowed Henderson to close her blouse. Pl,'s Ex. 1 ¶ 14. Following the incident, two female police officers took Henderson to a police car to arrest her. Pl.'s Ex. 4 at 66:6-8. Another police officer came over and told the female police officers, "Just let her calm down and she can go." Pl.'s Ex. 4 at 66:8-13. However, Officer Gress ran over and said, "no, it's my arrest." Pl.'s Ex. 4 at 66:13-14.

---

[2] For purposes of summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in [that party's] favor." *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (alteration in original) (internal quotation marks omitted).

That early morning of May 9, Henderson was arrested and taken into custody. Gress Decl. ¶ 32, 42. Officer Gress filed a Complaint or Incident Report alleging that he observed Henderson committing the following crimes: failing to disperse, engaging in disorderly conduct, obstructing the highway, and resisting arrest. Def.'s Ex. U. Specifically, Gress alleged that while he was dispersing a large crowd, Henderson got in his face and shouted, "Get their fucking badge numbers." Def.'s Ex. U. Gress also alleged that Henderson "became unruly and belligerent," shouted "obscenities" at the officers, and swung a cell phone at him. Def.'s Ex. U. Moreover, Gress alleged that Henderson incited the crowd and resisted arrest when she told another individual, "Don't let them take me, get him," and then ran. Def.'s Ex. U.

A Criminal Complaint against Henderson was filed on May 9, 2009. Def.'s Ex. V. The complainant was Officer Gress. Def.'s Ex. V. As explained by Officer Gress: "Based on information I provided to the detective assigned to investigate this arrest, Ms. Henderson was charged with criminal conspiracy, aggravated assault on a police officer (me), hindering apprehension, simple assault (on me), recklessly endangering another person, obstructing the administration of law, resisting arrest, failure to disperse and disorderly conduct." Gress Decl. ¶ 43.

Following her arrest, Henderson was held in a cell for more than twenty-four hours. Pl.'s Ex. 1 ¶ 15. On May 10, 2009, Henderson posted bail in the amount of $5,000 and was released from custody. Def.'s Ex. D. Despite her release, Henderson was unable to attend a graduation ceremony from college because she had to be in court responding to the charges filed against her. Pl.'s Ex. 1 ¶ 25.

At the preliminary hearing on July 23, 2009, the hindering apprehension charge was

dismissed and the remaining charges were held for trial. Def.'s Ex. D. On February 17, 2010, Henderson's trial began. Def.'s Ex. D. After a three-day trial, on February 19, 2010, a jury found Henderson not guilty of all charges. Def.'s Ex. D.

## II. LEGAL STANDARD

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must then "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In ruling on a motion for summary judgment, the court must draw all inferences from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmoving party may not "rely merely upon bare assertions, conclusory allegations or suspicions" to support its claims. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982).

In essence, the inquiry at summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## III. DISCUSSION

### A. Malicious Prosecution

Henderson brings claims of Fourth Amendment malicious prosecution pursuant to § 1983[3] and Pennsylvania state law malicious prosecution. To prove a Fourth Amendment malicious prosecution claim, a plaintiff must show that:

> (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007). Similarly, a plaintiff pursuing a claim based on the Pennsylvania common law tort of malicious prosecution must establish the same first four required elements of a Fourth Amendment malicious prosecution claim; however, there is no requirement to prove a deprivation of liberty. *See Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 791 (3d Cir. 2000); *Kossler v. Crisanti*, 564 F.3d 181, 198 n.14 (3d Cir. 2009) (en banc). Thus, an analysis of the two claims can be done simultaneously, so long as it is not forgotten that Henderson's state law malicious prosecution claim may succeed even if she cannot demonstrate a deprivation of liberty.

Gress concedes that Henderson's criminal proceeding ended in her favor; however, he contends that she cannot establish any of the other elements of malicious prosecution. First,

---

[3] 42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

5

Gress argues that he did not initiate criminal proceedings against Henderson. "Although prosecutors rather than police officers are generally responsible for initiating criminal proceedings, an officer may, however, be considered to have initiated a criminal proceeding if he or she knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion." *Brockington v. City of Phila.*, 354 F. Supp. 2d 563, 569 (E.D. Pa. 2005) (internal quotation marks omitted); *accord White v. Brommer*, 747 F. Supp. 2d 447, 459 (E.D. Pa 2010); *Stango v. Rodden*, No. 00-5709, 2001 WL1175131, at *4 (E.D. Pa. Aug. 21, 2001); *see also Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (1998) ("Decisions have recognized that a § 1983 malicious prosecution claim might be maintained against one who furnished false information to, or concealed information from, prosecuting authorities." (internal quotation marks omitted)). Gress concedes that an officer may be held to have initiated criminal proceedings if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed decision, but argues that there is no evidence that he did anything of the sort.

     The evidence is indisputable that Gress filed a Complaint or Incident Report alleging that Henderson shouted obscenities at police officers, tried to hit him with her cell phone, asked another individual to get him, and then ran away from him. Additionally, Gress alleged that Henderson committed the following crimes: failing to disperse, engaging in disorderly conduct, obstructing the highway, and resisting arrest. Moreover, it is indisputable that Gress served as the complainant for Henderson's Criminal Complaint and that he acknowledges that the criminal charges brought against Henderson were based on his recounting of the incident. While Gress contends that none of the information he provided was false, the testimony of Henderson, and

6

several other witnesses at her criminal trial paints a very different picture of what happened on May 9, 2009. According to evidence provided by Henderson, she was an innocent bystander watching police make arrests on South Street, when she was suddenly, violently attacked by Gress, who then fabricated a story to support his arrest of her and his initiation of criminal charges against her. Given these divergent accounts, a genuine dispute of material fact exists as to whether Gress initiated the criminal proceeding against Henderson.

Second, Gress argues that he had probable cause to initiate the criminal proceeding. "Probable cause is proof of facts and circumstances that would convince a reasonable, honest individual that the suspected person is guilty of a criminal offense." *Lippay v. Christos*, 996 F.2d 1490, 1502 (3d Cir. 1993). "Generally, the question of probable cause in a section 1983 damage suit is one for the jury. This is particularly true where the probable cause determination rests on credibility conflicts." *Merkle*, 211 F.3d at 788 (citations omitted) (internal quotation marks omitted).

Here, there are clearly conflicting accounts of what occurred on May 9, 2009. However, viewing the evidence in the light most favorable to Henderson, the facts demonstrate that Gress lacked probable cause to arrest or prosecute Henderson because he fabricated his entire story. Because the probable cause determination rests on credibility conflicts, this is an issue for the jury.

Third, Gress contends that there is no evidence that he acted maliciously or for a purpose other than bringing Henderson to justice. "Actual malice in the context of malicious prosecution is defined as either ill will in the sense of spite, lack of belief by the actor himself in the propriety of the prosecution, or its use for an extraneous improper purpose." *Lee v. Mihalich*, 847 F.2d 66,

7

70 (3d Cir. 1988). "Malice may be inferred from the absence of probable cause." *Lippay*, 996 F.2d at 1502.

If the facts are taken in the light most favorable to Henderson, malice may be inferred because a genuine factual dispute exists as to whether Gress had probable cause to initiate prosecution of Henderson. Moreover, under Henderson's version of the events, Gress had to know that he was committing an impropriety when he initiated prosecution of Henderson because he had fabricated all of the reasons for her arrest and prosecution. Therefore, Henderson has sufficiently established the element of malice.

Lastly, Gress asserts that Henderson did not suffer a deprivation of liberty consistent with the concept of seizure because she did not experience a pretrial detention or other significant pretrial restrictions. "The type of constitutional injury the Fourth Amendment is intended to redress is the deprivation of liberty accompanying prosecution, not prosecution itself." *DiBella v. Borough of Beachwood*, 407 F.3d 599, 603 (3d Cir. 2005). "Pretrial custody and some onerous types of pre-trial, non-custodial restrictions constitute a Fourth Amendment seizure." *Id.* "[T]he Fourth Amendment does not extend beyond the period of pretrial restrictions." *Id.*

In *Johnson*, the plaintiff, who brought a Fourth Amendment malicious prosecution claim, had remained in a cell at the police station for approximately two days after a criminal complaint was filed against him until he was able to post bail. 477 F.3d at 79. The Court of Appeals for the Third Circuit held that "Johnson's pretrial custody for approximately two days, the requirement that he make bail, and the fact that he was ordered to return in approximately six weeks for a [preliminary] hearing constitute a deprivation of liberty consistent with the concept of 'seizure.'" *Id.* at 86.

On May 9, 2009, a Criminal Complaint was filed against Henderson, initiating the criminal proceeding. Bail was set in the amount of $5,000. Henderson remained in custody until she posted bail on May 10, 2009. Despite Gress's assertion to the contrary, Henderson experienced a pretrial detention when she was held in custody for approximately a day after the Criminal Complaint was filed against her. Additionally, she was ordered to attend a preliminary hearing that took place on July 23, 2009.[4] *See* Def.'s Ex. D. Thus, like the plaintiff in *Johnson*, Henderson's single day of pretrial custody after criminal proceedings were initiated, the requirement that she post bail, and the fact that she was ordered to attend a preliminary hearing constitute a deprivation of liberty consistent with the concept of a seizure under the Fourth Amendment.[5]

Henderson has sufficiently established all of the elements required for both a Fourth Amendment malicious prosecution claim and a Pennsylvania common law malicious prosecution claim. However, Gress contends that, even if Henderson has demonstrated the required elements of his malicious prosecution claims, he is entitled to qualified immunity on Henderson's Fourth Amendment malicious prosecution claim, and Henderson's state malicious prosecution claim is barred by Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA").

### B. Qualified Immunity

---

[4] A condition of Henderson's bail was that she "appear at all times required until full and final disposition of the case . . . ." 234 Pa. Code § 526(A)(1). Henderson was required to be present at her preliminary hearing. *See* 234 Pa. Code § 542(C) ("The defendant shall be present at any preliminary hearing . . . .")

[5] Although this seizure may be of a lesser intensity than some other types of seizures, the Third Circuit has explained that, in the context of a Fourth Amendment malicious prosecution claim, "the limited scope of the seizure . . . is germane to damages not liability." *Gallo v. City of Phila.*, 161 F.3d 217, 225 (3d Cir. 1998).

Defense counsel argues that Gress is entitled to qualified immunity. However, his entire qualified immunity argument consists of two broad, generic statements:

> Assuming that Plaintiff is able to point to some action on the part of Officer Gress that potentially violated her Constitutional rights, Officer Gress is nevertheless entitled to qualified immunity pursuant to standards set forth in *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Anderson v. Creighton*, 483 U.S. 635, 638 (1987); *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001), as modified in *Pearson v. Callahan*, 129 S. Ct. 808 (U.S. [sic] 2009). At all times, his conduct was objectively reasonable and conducted in good faith.

ECF No. 43 at 18-19. Defense counsel provides no specific justification as to why Gress is entitled to qualified immunity on Henderson's Fourth Amendment malicious prosecution claim. If the facts are taken in the light most favorable to Henderson, Gress knowingly arrested Henderson and initiated criminal proceedings against her without any cause, let alone probable cause. Clearly, his actions were not objectively reasonable and were not done in good faith. Counsel has not provided any other reason why Gress would be entitled to qualified immunity. "It would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Thus, Gress is not entitled to qualified immunity at summary judgment. Therefore, I will deny summary judgment as to Henderson's Fourth Amendment malicious prosecution claim.

### C.  Political Subdivision Tort Claims Act

The PSTCA provides: "Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. ANN. § 8541. This official immunity also extends to any employee of a local agency so long as the employee caused the injury while acting within the scope of his or her office or duties. *Id.* §

10

8545.  However, the PSTCA provides an exception to immunity for "any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct . . . ."  *Id.* § 8550.  Gress argues that he is entitled to immunity because he did not engage in willful misconduct.

Although willful misconduct has been equated with intentional torts, "[t]his equation has no validity in the context of a lawsuit based upon police conduct, however."  *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  Rather, "wilful[l] misconduct means that the actor desired to bring about the result that followed, or at least that he was aware that it was substantially certain to ensue."  *Evans v. Phila. Transp. Co.*, 212 A.2d 440, 443 (Pa.1965).  Thus, only if there is evidence presented in a malicious prosecution case that the officer knowingly initiated prosecution of the plaintiff without probable cause, may a jury find that the officer has engaged in willfull misconduct.  *See Renk*, 641 A.2d at 293-94 (explaining that in a false imprisonment case, a police officer acts with willful misconduct only when he deliberately arrests a person knowing that he lacks probable cause).

In this case, there are competing accounts of why Gress initiated prosecution.  If Henderson's evidence is believed, a jury could conclude that Gress initiated the prosecution knowing that he lacked probable cause because his reasons for Henderson's arrest and prosecution were a fabrication.  Given that a genuine issue of material fact exists as to whether Gress engaged in willful misconduct, I cannot conclude that Gress is entitled to immunity under the PSTCA.  Therefore, I will deny summary judgment as to Henderson's Pennsylvania common

law malicious prosecution claim.

### D. Intentional Infliction of Emotional Distress

Gress contends that Henderson cannot succeed on a claim of intentional infliction of emotional distress ("IIED") because she has not produced competent medical evidence of injury. According to the Supreme Court of Pennsylvania, to succeed on a claim for IIED, "at the very least, existence of the alleged emotional distress must be supported by competent medical evidence." *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987); *accord Bougher v. Univ. of Pittsburgh*, 882 F.2d 74, 80 (3d Cir. 1989) ("Pennsylvania requires that competent medical evidence support a claim of alleged intentional infliction of emotional distress."). Henderson concedes that she has produced no medical evidence to support her IIED claim. Therefore, I will grant Gress's motion for summary judgment as to Henderson's intentional infliction of emotional distress claim.

## IV. CONCLUSION

For the reasons stated above, I will deny Gress's motion for summary judgment as to Henderson's malicious prosecution claims, and grant it as to Henderson's intentional infliction of emotional distress claim.

                                                          s/Anita B. Brody

                                         _____
                                         ANITA B. BRODY, J.

Copies **VIA ECF** on _____ to:                Copies **MAILED** on _____ to: